## MAPLEY *v.* CITY OF PONTIAC.

1. APPEAL AND ERROR—QUESTIONS REVIEWABLE ON CERTIORARI TO MUNICIPAL ADMINISTRATIVE BOARD—EVIDENCE.

   Whether or not circuit court could hold, on certiorari from a city police and fire trial board's judgment in proceedings to remove a police officer, that certain testimony which had been introduced before the board was incompetent is not decided by Supreme Court where board had other testimony before it showing he was an active member in an organization whose oath of membership required that it should stand above all others, testimony sufficient to sustain its finding he was guilty of conduct unbecoming to an officer (Pontiac City Charter, chap. 3, §§ 54, 56).

2. MUNICIPAL CORPORATIONS—CHARTERS—DISMISSAL OF POLICE OFFICERS—ADMINISTRATIVE INQUIRY.

   Purpose of charter provisions setting up trial procedure for dismissal, demotion, or discipline of police officers and supplanting former power of dismissal without formal charges and a public hearing is to check hasty and inconsiderate action, prevent autocratic tendencies, and publicize the proceeding, but the proceeding is in the nature of an administrative inquiry whose purpose is accomplished by a fair hearing upon specific charges supported by evidence.

3. CONSTITUTIONAL LAW—REVIEW OF ADMINISTRATIVE ACTION—CERTIORARI—JURISDICTION.

   The action of an administrative tribunal designed to afford a hearing on specific charges supported by evidence in the matter of dismissing, demoting, or disciplining police officers is open to public consideration but not to judicial review by appeal or certiorari except as it is made to appear as a matter of law the essentials of jurisdiction have not been followed.

4. APPEAL AND ERROR—FINDING OF ADMINISTRATIVE TRIBUNAL—EVIDENCE.

   Under terms of charter providing for police and fire trial board, its finding of fact in proceeding to dismiss police officer for conduct unbecoming to an officer is final where supported by evidence (Pontiac City Charter, chap. 3, §§ 54, 56).

Appeal from Oakland; George (Fred W.), J., presiding. Submitted January 10, 1939. (Docket No. 71, Calendar No. 40,207.) Decided April 4, 1939.

Removal proceedings by City of Pontiac against Sherry Mapley before the police and fire trial board. Officer Mapley reviewed judgment of dismissal by certiorari in circuit court. Judgment for Officer Mapley. City of Pontiac appeals. Reversed without rehearing.

*Howard I. Bond* and *Thomas P. Gillotte,* for Officer Mapley.

*George A. Cram,* for City of Pontiac.

WIEST, J.  Sherry Mapley, a member of the police force of the city of Pontiac, upon charges of conduct unbecoming such an officer, had a trial thereon before the city police and fire trial board, was found guilty, and dismissed from the force. He reviewed the proceeding by certiorari in the circuit court and obtained a ruling that the testimony before the trial board, tested by rules of evidence applicable "in criminal and civil trials before courts," was insufficient to sustain the conviction. The city, by appeal in the nature of error to review certiorari, contends that the circuit court was without jurisdiction and, if with jurisdiction, could not review the evidence, apply rules applicable to strictly judicial tribunals and make deletions, but could do no more than determine whether the action of the trial board was wholly without the support of any evidence.

The city charter created a "Police and Fire Trial Board" of five appointive members, and provides:

"The chief of police or no member of the police department * * * shall be dismissed, demoted or

otherwise disciplined except upon formal complaint and after trial and conviction by the board. * * * "In case complaints are made to the board against either of said chiefs or any member of either of said departments, the board sitting as a trial body shall listen to the evidence produced by the accuser and accused and shall be the sole judge as to the existence of an offense and have full power to pass judgment as to guilt or innocence and to pronounce and enforce penalties under its rules and regulations which shall be final." Charter, chap. 3, §§ 54, 56.

Mr. Mapley was accused of becoming a member of an organization variously known as the "Black Legion," or "Night Riders," "Bullet Club," "Twenty-And Club," "Searchlight Club," "Black Shirts," "Unknown Legion," the secret oath of which required that he be anti-Catholic, anti-Jew, anti-Negro and anti-foreign-born, and such obligation should stand above all others and, as evidence of such membership, reference was made to his testimony before a circuit judge in a proceeding for discovery of crime. It was also charged that in an affidavit he stated he was a member of the "Night Riders," but not of the "Black Legion," after he was well aware that the real name of the "Night Riders" was the "Black Legion."

At the trial before the board Mr. Mapley testified that he joined the "Night Riders" with the consent of his superior officer in order to ascertain and report on its purpose and activities. His own admission, however, disclosed that he was somewhat active in his membership, both in taking other members of the force to the secret place of meeting to be initiated and in making two automobile trips to other cities. He explained rather feebly that he was acting only through fear and that when the

blood-curdling oath of membership was administered to a kneeling group, of which he was one, he made no response.

The testimony shows that his superior officer did give him permission to become a member of the organization in order to report about its activities but it also appears that he went beyond the need of investigation and became an active member of the organization, and his excuse for doing so by reason of fear evidently did not register with the trial board.

When he made the affidavit of membership in the "Night Riders," but not in the "Black Legion," he must have been well aware that the two names stood for the same organization.

At the hearing the accusers introduced the testimony of Mr. Mapley taken before the circuit judge in the mentioned proceeding and, over objection, it was received. The circuit judge, in the certiorari proceeding, held such testimony incompetent.

We need spend no time upon that point, for Mr. Mapley was a witness before the trial board and what he said there was a repetition of what he formerly testified to before the circuit judge, and, in any event, his testimony before the board was for consideration by the board, inclusive of reasonable inferences to be drawn from his admission and explanation of his activities in the "Night Riders," alias "Black Legion."

Trial before the police and fire trial board supplanted the former method of power of dismissal of police and firemen without formal charges and a public hearing, but the purpose thereof in conception and operation is wholly administrative. The charter provision checks hasty and inconsiderate action, prevents autocratic tendencies and publicizes

the proceedings. The hearing or trial before the board is not a trial at law but a proceeding in the nature of an administrative inquiry or inquisition and the purpose thereof is accomplished if there is a fair hearing upon specific charges supported by evidence. The action of the board is open to public consideration but not to judicial review in the sense of an appeal nor by certiorari, except it is made to appear as matter of law the essentials of jurisdiction have not been followed. The proceeding was administrative and, under the terms of the charter, the finding of fact by the board is final if supported by evidence.

In *Lilienthal* v. *City of Wyandotte*, 286 Mich. 604, statutory provisions, inclusive of the veterans' preference act, were involved. In the case at bar we have only charter provisions, administrative in intendment and character and purely local in operation, as *In re Fredericks*, 285 Mich. 262. This points out the distinction between the holdings in those cases upon the character of hearings.

The judgment in the circuit court is reversed without a rehearing, and with costs to appellant.

BUTZEL, C. J., and BUSHNELL, SHARPE, POTTER, CHANDLER, NORTH, and McALLISTER, JJ., concurred.