WELLING *v.* LIVONIA BOARD OF EDUCATION.
WAGSTAFF *v.* SAME.
KURZMAN *v.* WATERFORD BOARD OF EDUCATION.
Opinion of the Court.

1. Mandamus—Injunction—Legal Duty—Performance—Enforcement.

Mandamus or a mandatory injunction lies only to enforce the performance of a clear legal duty.

2. Schools and School Districts—Public Education—State Board of Education—Statutes—Supervision.

The legislature by statute has set up a system of free public elementary and secondary schools with leadership and general supervision of public education vested in the State board of education (Const 1963, art 8, §§ 2, 3).

3. Same — State Board of Education — Local School Boards — Regulations — School Days — Half-Day Session.

The State board of education has the responsibility of promulgating regulations specifying the number of hours necessary to constitute a school day for elementary school students, and in the absence of such regulations by the State board of education, provisions made by the local school boards for one-half day sessions because of lack of funds do not constitute an abuse of discretion (Const 1963, art 8, §§ 2, 3).

4. Same—State Board of Education—Local School Districts—Half Days—Relief—Legal Duty.

No relief is available to plaintiff seeking mandamus to force local school districts to have full school days rather than

References for Points in Headnotes

[1, 4] 34 Am Jur, Mandamus § 34.
[2, 3] 47 Am Jur, Schools §§ 7, 8.
[5] 5 Am Jur 2d, Appeal and Error § 1009.
[6] 1 Am Jur 2d, Administrative Law § 137.
[7] 2 Am Jur 2d, Administrative Law § 302.
[8–10] 2 Am Jur 2d, Administrative Law § 677.

half days since the constitutionally responsible State board of education has imposed no duty upon local school boards to maintain school for a full day (Const 1963, art 8, §§ 2, 3).

5. COSTS—SCHOOLS AND SCHOOL DISTRICTS—INJUNCTIONS—ELEMENTARY SCHOOL—FULL-DAY SESSIONS—PUBLIC QUESTION.

No costs are allowed on appeal by local school districts from injunctions requiring them to provide full days of instruction for elementary school students, a public question being involved.

SEPARATE OPINION.

BLACK, T. M. KAVANAGH, and T. G. KAVANAGH, JJ.

6. SCHOOLS AND SCHOOL DISTRICTS—LENGTH OF SCHOOL DAY—PUBLIC SCHOOLS—STATUTES.

*The length of a school day in this State's free public elementary and secondary schools is not validly determined by public act (PA 1955, No 269, § 575, as amended by PA 1967, No 237).*

7. SAME—STATE BOARD OF EDUCATION—PUBLIC SCHOOLS—LEGISLATURE.

*The State board of education has been directed by the people to administer the public school system and the legislature may not by law interfere with the board's execution of its duty (Const 1963, art 8, §§ 2, 3).*

8. SAME—STATE BOARD OF EDUCATION—ADMINISTRATION—AUTHORITY—COURTS—REVIEW—STATUTES.

*A rule made by the State board of education within its administrative authority is not for this Court, or any court, to review either for wisdom or test as against any statute.*

9. SAME—STATE BOARD OF EDUCATION—ADMINISTRATION OF PUBLIC SCHOOLS—JUDICIAL NOTICE.

*Judicial notice is taken of the fact that it would be difficult to administer the operations of our free public school system statewide without the flexibility of allowing the State board of education to lead and superintend the system (Const 1963, art 8, § 3).*

10. SAME — STATE BOARD OF EDUCATION — LOCAL SCHOOL BOARDS — ADMINISTRATIVE POWERS.

*Action taken by local school boards in the absence of superintendence by the State board of education cannot be held to*

*be illegal or .violative of any statute, for that holding might constitute interference with the administrative powers and duties which the ·people have vested exclusively in the State board of education (Const 1963, art 8, §§ 2, 3).*

Appeal from Wayne, Kaufman (Charles), J., and Court of Appeals prior to decision. Submitted November 4, 1969. (Calendar No. 26, Docket Nos. 52,618, 52,619.) Decided November 6, 1969.

Complaint by Dale Welling, Lee Wagstaff, and 46 others against the Board of Education for the Livonia School District and Rolland Upton, superintendent of schools, for a writ of mandamus or a mandatory injunction to require the Livonia School District to provide a full day of instruction for all elementary school students. Injunction granted. Defendants appealed to Court of Appeals. Leave granted. Reversed.

Appeal from Oakland; Beer (William John), J., and Court of Appeals prior to decision. Submitted November 4, 1969. (Calendar No. 27, Docket No. 52,622.) Decided November 6, 1969.

Complaint by Stanley W. Kurzman and 21 others against the Board of Education for the Waterford School District for a writ of mandamus or a temporary injunction to require the Waterford School District to provide a full day of instruction for all elementary school students. Injunction granted. Defendants appealed to the Court of Appeals, and petitioned Supreme Court for leave to appeal prior to decision by the Court of Appeals. Leave granted. Reversed.

*Kenneth J. Morris* and *James E. McCarthy,* for plaintiffs Welling and others.

*Harris, Stein & Hooberman (Maurice N. Blake* and *Jerome Harris,* of counsel), for plaintiffs Wagstaff and others.

*Campbell, Lee, Kurzman & Leitman (Eugene K. Pool* and *Frances R. Avadenta,* of counsel), for plaintiffs Kurzman and others.

*Robert M. Thrun,* for defendant Livonia School District.

*John T. Rogers,* for defendant Waterford School District.

*Amicus Curiae:* Michigan Education Association by *Levin, Levin, Garvett & Dill.*

PER CURIAM. Plaintiffs sought mandamus or a mandatory injunction to require defendant school boards to provide a full day of instruction for all students in the Livonia and Waterford School Districts. The trial courts granted mandatory injunctions. The matters are here on our grant of by-pass of the Court of Appeals.

Mandamus or a mandatory injunction lies only to enforce the performance of a clear legal duty.

"The legislature shall maintain and support a system of free public elementary and secondary schools as defined by law." (Const 1963, art 8, § 2).

The legislature has set up a system of free public elementary and secondary schools by enacting the provisions of the school code.

"Leadership and general supervision over all public education * * * is vested in a state board of education." (Const 1963, art 8, § 3).

It is the responsibility of the State board of education to supervise the system of free public schools set up by the legislature and, as a part of that responsibility, to promulgate regulations specifying the number of hours necessary to constitute a school day for elementary school students as well as for other classifications or groupings of students, to determine the curricula and, in general, to exercise leadership and supervision over the public school system.

In the absence of rules or regulations by the State board of education, we do not find that the provisions for one-half day sessions because of lack of funds to operate on a full-day schedule or for the teaching of certain subjects on a compressed schedule constitute an abuse of discretion by the local school board.

Since no clear legal duty has been imposed upon the local school boards by the constitutionally responsible State board of education, no relief should have been granted to the plaintiffs in these cases.

Reversed. No costs, a public question being involved.

T. E. BRENNAN, C. J., and DETHMERS, KELLY, BLACK, T. M. KAVANAGH, ADAMS, and T. G. KAVANAGH, JJ., concurred.

BLACK, J. (*concurring*). The controlling question in these cases is whether the length of a school day, in Michigan's "system of free public elementary and secondary schools as defined by law" (Const 1963, art 8, § 2), is determinable validly by legislation,

specifically by PA 1967, No 237.[1]   Our answer is, "No."

An eventful transfer from the legislature to the State board of education, of overall authority to administer the aforesaid system, has been overlooked in the course of these legal proceedings. Formerly the constitutional responsibility for such administration, with duties "prescribed by law," devolved upon an elected superintendent of public instruction (Const 1908, art 11, § 2). By the Constitution of 1963, however, the framers proposed and the people adopted a new policy for administration of the system. Now the State board of education, unfettered by those qualifying words "prescribed by law" or "provided by law," is armed and charged exclusively with the power and responsibility of administering the public school system which the legislature has set up and now maintains pursuant to section 2 of the eighth article. By section 3 of the same article, the board has been directed —not by the legislature but by the people—to lead and superintend the system and become, exclusively, the administrative policy-maker thereof.[2]   That specific directive having come from the people, the legislature may not by law interfere with its execution by the board; hence our negative answer above.

---

[1] Amending CLS 1961, § 340.575 (MCLA 1969 Cum Supp § 340.575, Stat Ann 1969 Cum Supp § 15.3575).—REPORTER.

[2] See the official comment which the delegates appended to section 3, upon proposal to the people of the Constitution of 1963, particularly this:

*Comment.* "This is a new section combining and enlarging upon the provisions in sections 2 and 6, article 11, of the present Constitution. It attempts to embody two fundamental principles: (1) the concern of all people in educational processes as a safeguard for democracy; (2) greater public participation in the operation of educational institutions.

"*The enlarged state board provides a policy-making body on a state level.*" (Emphasis supplied.)   2 Constitutional Convention Official Record 1961, p 3396.

The record before us discloses that the State board of education proposed, and distributed for the purposes of a public hearing conducted November 15, 1968, a suggested policy-making rule which, had it been placed in effect, would have solved all questions which the parties to these consolidated cases have briefed and argued. That rule, well within the administrative authority of the State board of education as we find, is not for this Court or any court to review either for wisdom or test as against any presently cited statute, PA 1967, No 237, expressly included.[3]

The intent of the people, exhibited as it is by the first and second paragraphs of section 3, is both plain and understandable. Our system of free public elementary and secondary schools has always required a general superintendent charged with the duties of administration, leadership, and policy-making. Once, as said above, those duties were prescribed by law. Now the people have turned the system over to the State board of education for management, administration, and superintendence. It would seem literally that both the framers of the new instrument and the people voting to adopt it foresaw the need for such management, administration, and superintendence independent of the delays that are attendant upon obtaining legislative authority in such regard. In that connection the report of December 3, 1968, made by the superintendent of public instruction to the State board with reference to the public hearing of November 15, 1968, points out significantly that "There is a need for flexibility

---

[3] We do not of course approve or disapprove the proposed rule, a copy of which the attorney general has attached to each of his briefs *amicus*. That is not our function nor that of the circuit court. We simply say that the board may lawfully adopt such a rule, or any similarly-purposed administrative rule, and may see to the due effectuation thereof.

in school district scheduling throughout the State."
His report pursues that thought with indicative
persuasion.

We take judicial notice that it would be most
difficult to administer the functions and operations
of our free public school system statewide without
that kind of administrative flexibility which inheres
in section 3 and which the superintendent of public
instruction says is needed.

In the current absence of what seems to be need-
ful superintendence by the State board of education,
so far at least as concerns the number of school
days per year, hours of school days, et cetera, the
defendant boards could but act according to their
own discretion. We are unwilling to say or hold
that their actions were illegal or unlawful, or viola-
tive of any statute the effect of which might con-
stitute an unwitting interference, by legislation,
with the administrative powers and duties which
the people have vested exclusively in the State
board of education.

Reversed and remanded for dismissal of each
complaint, with prejudice, but without costs.

T. M. KAVANAGH, and T. G. KAVANAGH, JJ., con-
curred with BLACK, J.