STATE BOARD OF EDUCATION v HOUGHTON LAKE
COMMUNITY SCHOOLS

Docket No. 80686. Argued March 9, 1988 (Calendar No. 2). Decided
June 27, 1988.

The State Board of Education brought a complaint for mandamus
in the Roscommon Circuit Court against the Houghton Lake
Community Schools and its board to compel the district to
make up six days of instruction canceled during the 1985-86
school year because of snow. The state board asserted that
under state law the district was required to provide 180 days of
instruction. The court, Carl L. Horn, J., denied mandamus,
finding that state law does not mandate 180 days of instruction,
but merely conditions receipt of state financial aid upon com-
pletion of the requisite number of days without further inter-
ference from the state board. The Court of Appeals, R. B.
BURNS, P.J., and GRIBBS and DAVIS, JJ., affirmed, holding that
the state board's administrative rule precluded imposition of a
clear legal duty to provide 180 days of instruction by legislative
enactment. The Court of Appeals ruled that the power to
mandate the number of days of instruction reposed in the state
board, rather than the Legislature. It further found that the
Legislature has no constitutional power to mandate the number
of days of instruction that a school district must provide, that
power lying exclusively with the State Board of Education. The
Attorney General, nominally intervening on behalf of the state
board, moved for reconsideration in the Court of Appeals. The
board responded to the motion. The Court of Appeals denied
reconsideration (Docket No. 92416). The plaintiffs appeal.

In a unanimous opinion by Justice BOYLE, the Supreme Court
*held:*

Local school districts have no clear legal duty to provide 180
days of instruction. Districts willing to forego state financial aid
may exercise the discretion to provide a lesser number.

1. Section 1284 of the School Code and § 101 of the State
School Aid Act provide that each school district which fails to

REFERENCES

Am Jur 2d, Schools § 93.
Determination of school attendance, enrollment, or pupil population
for purposes of apportionment of funds. 80 ALR2d 953.

provide a minimum of 180 days of pupil instruction per year shall forfeit ¹⁄₁₈₀ of its total state aid appropriation for each day of failure. Read in their entirety so as to produce an harmonious and consistent enactment, the statutes set forth conditions for the receipt of state financial aid and do not impose an absolute imperative that 180 days of instruction be provided.

2. In this case, because the defendants have no clear legal duty to provide 180 days of instruction, denial of mandamus was proper, rendering it unnecessary to address the defendants' other arguments.

Affirmed.

157 Mich App 396; 403 NW2d 561 (1987) affirmed.

SCHOOLS — DAYS OF INSTRUCTION — STATE FINANCIAL AID.

Local school districts have no clear legal duty to provide 180 days of instruction; districts willing to forego state financial aid may exercise the discretion to provide a lesser number (MCL 380.1284[1], 388.1701[2]; MSA 15.41284[1], 15.1919[1001][2]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Patrick J. O'Brien,* Assistant Attorney General, for the plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Gerald F. Young* and *Paul J. Zimmer,* Assistant Attorneys General, for the intervening plaintiff.

*Thrun, Maatsch & Nordberg, P.C.* (by *Thomas J. Nordberg* and *Beverly J. Bonning*), for the defendants.

Amicus Curiae:

*Linda L. Bruin* for Michigan Association of School Boards.

BOYLE, J. In this case we are asked to decide whether the State Board of Education may, by court order, compel a local board of education to provide 180 days of instruction in a school year.

The Attorney General, as intervening plaintiff-appellant, appeals from the January 21, 1987,

decision[1] of the Court of Appeals, upholding the order of the Roscommon Circuit Court denying the State Board of Education's request for a writ of mandamus compelling the defendants, Houghton Lake Community Schools and Houghton Lake Board of Education, to provide 180 days of instruction in the 1985-86 school year. The Court of Appeals reasoned that there was no clear legal duty on the part of the Houghton school board to provide any additional days of instruction, since the Houghton school board had complied with the 180-day rule as interpreted in the regulations of the State Board of Education. See 1979 AC, R 340.10 and 340.11.[2] The Court of Appeals further reasoned that a subsequent amendment of the State School Aid Act, 1986 PA 212, § 101(3),[3] which

---

[1] 157 Mich App 396; 403 NW2d 561 (1987).

[2] 1979 AC, R 340.11 provides:

> Days not in session because of conditions not within the control of school authorities, such as severe storms, fires, epidemics or health conditions as defined by the city, county or state health authorities, may be counted as days of student instruction.

Since this action was filed, the state board has amended this regulation to conform with 1986 PA 212, § 101(3). The new Rule 340.11, effective December 28, 1987, provides:

> The first 2 days when pupil instruction is not provided because of conditions not within the control of school authorities, such as severe storms, fires, epidemics, or health conditions as defined by the city, county, or state health authorities, shall be counted as days of pupil instruction. Subsequent days shall not be counted as days of pupil instruction.

[3] 1986 PA 212, § 101(3) provides:

> The first 2 days when pupil instruction is not provided because of conditions not within the control of school authorities, such as severe storms, fires, epidemics, or health conditions as defined by the city, county, or state health authorities, shall be counted as days of pupil instruction. Subsequent such days shall not be counted as days of pupil instruction. [MCL 388.1701(3); MSA 15.1919(1001)(3).]

conflicts with the method of calculating days of instruction under the regulations of the Michigan State Board of Education, is void under Const 1963, art 8, § 3.[4]

We affirm the decision of the Court of Appeals, although on different grounds. In doing so, we do not reach the constitutional issue addressed by the

[4] Const 1963, art 8, § 3 provides:

State board of education; duties.

Leadership and general supervision over all public education, including adult education and instructional programs in state institutions, except as to institutions of higher education granting baccalaureate degrees, is vested in a state board of education. It shall serve as the general planning and coördinating body for all public education, including higher education, and shall advise the legislature as to the financial requirements in connection therewith.

Superintendent of public instruction; appointment, powers, duties.

The state board of education shall appoint a superintendent of public instruction whose term of office shall be determined by the board. He shall be the chairman of the board without the right to vote, and shall be responsible for the execution of its policies. He shall be the principal executive officer of a state department of education which shall have powers and duties provided by law.

State board of education; members, nomination, election, term.

The state board of education shall consist of eight members who shall be nominated by party conventions and elected at large for terms of eight years as prescribed by law. The governor shall fill any vacancy by appointment for the unexpired term. The governor shall be ex-officio a member of the state board of education without the right to vote.

Boards of institutions of higher education, limitation.

The power of the boards of institutions of higher education provided in this constitution to supervise their respective institutions and control and direct the expenditure of the institutions' funds shall not be limited by this section.

Court of Appeals, nor do we approve of the Court of Appeals resolution of this issue, but we instead adopt a statutory analysis similar to that of the circuit court.[5]

I

FACTS

It is undisputed that Houghton Lake Community Schools is a fourth-class district organized under the Michigan School Code of 1976, MCL 380.1 *et seq.;* MSA 15.4001 *et seq.* Houghton Lake received "minimal" state financial assistance in the 1985-86 school year, totaling approximately $11,000, or sixty dollars per day for the entire district. The Houghton Lake board adopted a calendar for the school year which provided for 180 days of instruction. The last scheduled day of school was to be June 9, 1986.

Severe weather during the 1985-86 calendar year forced a closing of Houghton Lake Community Schools for six scheduled days of instruction. As it had in previous years, the Houghton Lake board decided not to make up the "snow days." The Houghton Lake board's decision was entered as a resolution dated March 10, 1986.

On April 21, 1986, the State Board of Education filed a complaint for mandamus in the Roscommon Circuit Court. The state board's complaint noted that the defendant, Houghton Lake board, had resolved not to make up the six snow days and

---

[5] We also do not reach two other constitutional issues raised by the Houghton Lake board: 1) whether, assuming that the defendant has a clear legal duty to provide 180 days of instruction under MCL 380.1284(1); MSA 15.41284(1) and MCL 388.1701(2); MSA 15.1919(1001)(2), this provision violates the Title-Object Clause of Const 1963, art 4, § 24; and 2) whether, assuming that there is a clear statutory duty on the part of the defendant to provide 180 days of instruction, these statutes are in violation of the Headlee Amendment, Const 1963, art 9, § 29.

alleged that the defendant was thereby not in compliance with state law[6] requiring 180 days of instruction.

The Houghton Lake board filed an answer on April 30, 1986. The defendant denied that it was under a legal duty to provide 180 days of instruction and requested dismissal of the state board's complaint with prejudice.

A show cause hearing was held in circuit court on May 5, 1986. The defendant, Houghton Lake board, argued that it had no clear legal duty to provide 180 days of instruction, hence an order of mandamus should not be issued for four reasons. First, according to defendant, it was in compliance with the 180-day rule as construed in 1979 AC, R 340.11, promulgated by the state board, and that a subsequent amendment of the school aid act[7] in conflict with this regulation unconstitutionally usurped the authority of the state board under Const 1963, art 8, § 3.[8] Second, the defendant argued that state law does not mandate 180 days of instruction, but merely conditions the receipt of state financing upon compliance with the 180-day requirement. Thus, according to the defendant, the state board's sole remedy for noncompliance was to withhold state financing on a per diem basis for the lost days of instruction. Third, the defendant argued that, if state law mandates 180 days of instruction, the statutes involved[9] are void under the Title-Object Clause of Const 1963, art 4, § 24 in that this title refers only to financing or appropriations and not to the administration of local districts. Fourth, the defendant argued that, if state

[6] The state board's complaint specifically alleged that the Houghton Lake board's resolution violated the requirements of MCL 380.1284; MSA 15.41284 and MCL 388.1701; MSA 15.1919(1001).

[7] See n 3.

[8] See n 4.

[9] See n 6.

law mandates 180 days of instruction, the statutes involved are in violation of the Headlee Amendment, Const 1963, art 9, § 29, in that they impose a new activity or service upon a local unit of government without an appropriation by the state.[10]

On the same day, May 5, 1986, the circuit court issued an order denying a writ of mandamus to the state board. The circuit court reasoned that state law does not mandate 180 days of instruction, but merely conditions the receipt of state financing upon completion of the required days of instruction. According to the circuit court, the Houghton Lake board was empowered to offer less than 180 days of instruction under financial penalty and without further interference from the state board. The circuit court did not reach the constitutional issues raised by the defendant.

The state board appealed the circuit court's decision, arguing that the 180-day statutory requirement is mandatory, that the administrative rule upon which the defendant relied for compliance was rescinded by subsequent amendments of the school aid act, and that those amendments violate neither the Title-Object Clause nor the Headlee Amendment of Const 1963. The Court of Appeals disagreed and affirmed the trial court's order denying a writ of mandamus. However, the Court of Appeals reasoned that there was no clear legal duty because the defendant properly relied upon 1979 AC, R 340.11.[11] Citing the authority of

[10] The defendant reasoned that under prior law, as construed in 1979 AC, R 340.11 (see n 2), local boards were authorized to count snow days as days of instruction, while under 1986 PA 212, § 101(3) (see n 3) only the first two snow days may be counted as days of instruction. Thus, 1986 PA 212, § 101(3) would mandate a new activity or service—four additional days of instruction—without providing additional financing by the state.

[11] See n 2.

the state board under Const 1963, art 8, § 3, the Court of Appeals concluded that the subsequent amendment of the school aid act upon which the state board relied was ineffective to rescind 1979 AC, R 340.11. The Court of Appeals explained:

> Clearly, requirements governing the number of days of instruction to be provided must also come from the state board. While we believe that imposition of financial penalties for failure to hold 180 days of instruction is within the province of the legislative duty to "maintain and support a system of free public . . . schools," we conclude that the Legislature has no constitutional power to mandate the number of days of instruction which a district must provide. That power lies exclusively with the board of education. *Welling* [v *Livonia Bd of Ed,* 382 Mich 620, 623; 171 NW2d 541 (1969)]. [157 Mich App 396, 399-400; 403 NW2d 396 (1987).]

Thus, although the Court of Appeals ruled against the state board, its reasoning that the state board's own administrative rule precluded the imposition of a clear legal duty by legislative enactment[12] provided an expanded interpretation of the state board's authority.

The Attorney General filed a motion for reconsideration of the Court of Appeals decision, nominally representing the state board, arguing that the subsequent amendments of the school aid act upon which the school board had relied were valid and rescinded 1979 AC, R 340.11. Not surprisingly, in view of the support of board authority provided by the opinion, the state board responded with its own brief in opposition to the motion. The state board argued that the Court of Appeals had correctly ruled that the constitutional power to man-

---

[12] Again, we note that our resolution of this matter does not require a ruling on this constitutional issue or the other constitutional issues raised by the defendant.

date the number of days of school instruction is reposed in the state board rather than the Legislature.[13] The Court of Appeals denied reconsideration in an order dated April 2, 1987.

The Attorney General subsequently sought leave to appeal in this Court. The application was opposed by the state board as well as the Houghton Lake Board of Education. We granted leave to appeal in an order dated October 6, 1987.[14]

II

ANALYSIS

The circuit court order from which the state board, and later the Attorney General, appealed denied a writ of mandamus requiring the Houghton Lake board to reschedule or make up a number of snow days in its 1985-86 school year. As we have held on numerous occasions, to obtain a writ of mandamus, the plaintiff must have a clear legal right to the performance of the specific duty sought to be compelled and the defendants must have a clear legal duty to perform the same. *Pillon v Attorney General,* 345 Mich 536, 539; 77 NW2d 257 (1956); *Janigian v Dearborn,* 336 Mich 261, 264; 57 NW2d 876 (1953). Mandamus is an extraordinary remedy which may lie to compel the exercise of discretion, but not to compel its exercise in a particular manner. *Teasel v Dep't of Mental*

---

[13] This brief was also filed by an assistant attorney general, nominally representing the State Board of Education. Although the Attorney General is now, in reality, arguing both sides of this controversy, for the sake of clarity we will continue to identify the parties as the Attorney General and state board. See MCL 14.28; MSA 3.181 and MCL 14.101; MSA 3.211.

[14] The same order granted leave for the filing of a brief amicus curiae by the Michigan Association of School Boards. The amicus brief subsequently filed was limited to the analysis of constitutional issues underlying the opinion of the Court of Appeals. 429 Mich 858 (1987).

*Health,* 419 Mich 390, 409-410; 355 NW2d 75 (1984). The primary purpose of the writ of mandamus is to enforce duties created by law, *Kosiba v Wayne Co Bd of Auditors,* 320 Mich 322, 326; 31 NW2d 68 (1948), where the law has established no specific remedy and where, in justice and good government, there should be one. *Lenz v Mayor of Detroit,* 338 Mich 383, 395; 61 NW2d 587 (1953).

Here, the state board has premised the alleged legal duty of the Houghton Lake board on a section of the School Code of 1976, 1976 PA 451, MCL 380.1 *et seq.;* MSA 15.4001 *et seq.* Section 1284(1) provides:

> The board of a school district shall determine the length of the school term. The minimum number of days of student instruction shall be 180. A district failing to hold 180 days of student instruction shall forfeit $\frac{1}{180}$ of its total state school aid for each day of failure. Not later than August 1, the board of each district shall certify to the state board the number of days of student instruction in the previous school year. If the district did not hold at least 180 days of student instruction, the deduction of state school aid shall be made in the following fiscal year from the first payment of state school aid. Days lost because of strikes or teachers' conferences shall not be counted as days of student instruction. [MCL 380.1284(1); MSA 15.41284(1).]

This provision is codified in art 2, part 16 of the School Code, entitled "Boards of Education; Powers and Duties Generally."

The state board has additionally premised the alleged duty of the Houghton Lake board on a section of the State School Aid Act of 1979, 1979 PA 94, MCL 388.1601 *et seq.;* MSA 15.1919(901) *et seq.* Section 101 provides in pertinent part:

(2) Each district shall provide a minimum of 180 days of pupil instruction. Except as provided in subsections (6) and (7), a district failing to hold 180 days of pupil instruction shall forfeit $\frac{1}{180}$ of its total state aid appropriation for each day of failure. A district failing to comply with rules promulgated by the state board, which rules establish the minimum time pupil instruction is to be provided to pupils for the regular school year, shall forfeit from its total state aid allocation an amount determined by applying a ratio of the time duration the district was in noncompliance in relation to the minimum time pupil instruction is required. A district failing to meet both the minimum 180 days of pupil instruction requirement and the prescribed time of pupil instruction requirement shall be penalized only the higher of the 2 amounts calculated under the forfeiture provisions of this subsection. Not later than August 1, the board of each district shall certify to the department the number of days of pupil instruction in the previous school year. If the district did not hold at least 180 days of pupil instruction, the deduction of state aid shall be made in the following fiscal year from the first payment of state school aid. Days lost because of strikes or teachers' conferences shall not be counted as days of pupil instruction. A district not having 70% of the district's membership in attendance on any day shall receive state aid in that proportion of $\frac{1}{180}$ that the actual percent of attendance bears to 70%. The state board shall promulgate rules for the implementation of this subsection.

(3) The first 2 days when pupil instruction is not provided because of conditions not within the control of school authorities, such as severe storms, fires, epidemics, or health conditions as defined by the city, county, or state health authorities, shall be counted as days of pupil instruction. Subsequent such days shall not be counted as days of pupil instruction. [MCL 388.1701; MSA 15.1919(1001).]

This provision is contained in art 10 of the State

School Aid Act entitled, "Enrollment; Pupil Instruction Days; Deficit Operation; Membership; Adult Education."

The Attorney General argues that the use of the word "shall" in these provisions indicates that the purpose of the Legislature was to mandate 180 days of instruction per pupil. In support of this reading, the Attorney General cites *State Bd of Ed v Garden City School Dist,* 62 Mich App 376; 233 NW2d 547 (1975). The Attorney General also points out that the trial court's reading of these provisions would require adherence to the 180-day requirement. Finally, in anticipation of the Houghton Lake board's argument that it is in compliance with the 180-day requirement as implemented by 1979 AC, R 340.11,[15] the Attorney General argues that this administrative rule was rescinded by the enactment of 1986 PA 212, § 101(3), codified at MCL 388.1701(3); MSA 15.1919(1001)(3).

The Houghton Lake board agrees that the word "shall" in the statutes cited by the Attorney General indicates a legislative purpose to require 180 days of instruction. However, the Houghton Lake board reads these provisions as also expressly providing the exclusive remedy of the state board in the withholding of financial aid. Thus, in the words of the Houghton Lake board, these statutes offer a "carrot" and not a "stick." Local boards have no clear legal duty to take the carrot, but may forego state financing as the cost of authorizing less than 180 days of instruction in a given school year. The Houghton Lake board has alternatively argued that it is in compliance with the mandatory 180-day requirement as implemented by 1979 AC, R 340.11.

As we have explained in prior decisions:

[15] See n 2.

In resolving disputed interpretations of statutory language, it is the function of a reviewing court to effectuate the legislative intent. *Aikens v Dep't of Conservation,* 387 Mich 495, 499; 198 NW2d 304 (1972). If the language used is clear, then the Legislature must have intended the meaning it has plainly expressed, and the statute must be enforced as written. *In re Certified Questions,* 416 Mich 558, 567; 331 NW2d 456 (1982); *Dussia v Monroe County Employees Retirement System,* 386 Mich 244, 249; 191 NW2d 307 (1971). [*Hiltz v Phil's Quality Market,* 417 Mich 335, 343; 337 NW2d 237 (1983).]

Our intrinsic analysis of these statutory provisions leads us to the conclusion that the Legislature has clearly authorized a forfeiture of state financial aid as the exclusive means of enforcing the 180-day instructional standard.

We agree with the Attorney General's assertion that the word "shall" is ordinarily construed in its imperative sense, excluding the idea of discretion. *McAvoy v H B Sherman Co,* 401 Mich 419, 446; 258 NW2d 414 (1977); *Southfield Twp v Drainage Bd for Twelve Towns Relief Drains,* 357 Mich 59, 76; 97 NW2d 821 (1959). *Sauder v Royal Oak Twp Dist 10 Bd of Ed,* 271 Mich 413, 418; 261 NW 66 (1935). However, the question presented in this case is not whether the "shall" indicates an imperative, but whether the imperative is absolute. In this regard, one commentator has explained:

No statutory provisions are intended by the legislature to be disregarded; but where the consequences of not obeying them in every particular are not prescribed, the courts must judicially determine them. In doing so they must consider the importance of the literal observance of the provision in question to the object of the legislation. If the provision is essential it is mandatory. A departure from it is fatal to any proceeding to execute

the statute or to obtain the benefit of it. [2A Sands, Sutherland Statutory Construction (4th ed), § 57.01, p 640.]

Here we need not search out the legislative objectives in enacting the School Code of 1976 or the State School Aid Act of 1979, since the consequence of a local board's failure to provide 180 days of instruction is provided in the very next sentence of each statute, "A district failing to hold 180 days of student instruction shall forfeit 1/180 of its total state school aid for each day of failure." A statute must be read in its entirety, and meaning given to one section arrived at after due consideration of other sections so as to produce, if possible, an harmonious and consistent enactment as a whole. *State Treasurer v Wilson,* 423 Mich 138, 145; 377 NW2d 703 (1985); *Williams v Secretary of State,* 338 Mich 202, 207; 60 NW2d 910 (1953).

A reading of these statutes as a whole under the construction urged by the Attorney General might render the succeeding financial penalty mere surplusage, since in all cases the 180-day standard could be specifically enforced with a writ of mandamus. However, as we have previously held, every word of a statute should be given meaning, and no word should be treated as surplusage or rendered nugatory if at all possible. *Baker v General Motors Corp,* 409 Mich 639, 665; 297 NW2d 387 (1980), *(After Remand),* 420 Mich 463; 363 NW2d 602 (1984), aff'd 478 US 621; 106 S Ct 3129; 92 L Ed 2d 504 (1986); *Stowers v Wolodzko,* 386 Mich 119, 133; 191 NW2d 355 (1971). The alternative offered by the Attorney General's construction is equally unappealing. Should we read the financial penalty as a cumulative remedy, we would run afoul of the maxim *expressio unius est exclusio alterius.* See *Alan v Wayne Co,* 388 Mich 210, 253;

200 NW2d 628 (1972); *Sebewaing Industries, Inc v Village of Sebewaing,* 337 Mich 530, 545; 60 NW2d 444 (1953). We are aware that the application of these maxims is not absolute, but we find no countervailing logic to overcome their application. Cf. *Luttrell v Dep't of Corrections,* 421 Mich 93, 102; 365 NW2d 74 (1984). See also 2A Sands, Sutherland Statutory Construction (4th ed), § 47.23, p 194.

The prior statutes upon which these provisions were based reinforce our conclusion that the Houghton Lake board has the discretion to offer less than 180 days of instruction under penalty of forfeiture of state financial aid. The present § 1284 of the School Code of 1976, MCL 380.1284; MSA 15.41284, was originally enacted as 1881 PA 164, ch 2, § 20, which provided:

> At the first and the annual meetings only, to determine the length of time a school shall be taught in their district during the ensuing year, which shall not be less than nine months in districts having eight hundred children over five and under twenty years of age, and not less than five months in districts having from thirty to eight hundred children of like ages, nor less than three months in all other districts, on pain of forfeiture of their share of the one-mill tax and primary school interest fund.

Similar language was carried forward in 1913 PA 230, § 20,[16] 1921 PA 313, § 1,[17] 1927 PA 319, part 2,

---

[16]  At the first and annual meeting only to determine the length of time a school shall be taught in their district during the ensuing year, which shall not be less than nine months in all districts having four hundred or more children of school age, and in all districts having over thirty children and less than four hundred children, not less than eight months, and not less than five months in all other districts on the pain of forfeiture of their share of the primary school interest fund . . . .

[17]  At the first and annual meeting only to determine the length of time a school shall be taught in their district during

ch 2, § 10,[18] and 1955 PA 269, § 575.[19] The 180-day requirement first appeared in 1967 PA 237, § 575. In this act, local districts are given unqualified discretion in determining the length of the school term while their discretion in setting the minimum days of instruction is qualified by the forfeiture provision. Thus, local districts retained the same discretion as under the previous enactment, although the length of the school year for qualification for state aid is more precisely set forth by statute.

The genesis of § 101 of the School Aid Act of 1979 is quite similar. This provision appeared in 1957 PA 312, § 31 as follows:

the ensuing year, which shall not be less than nine months in all districts, except in school districts having an assessed valuation of less than seventy-five thousand dollars, the minimum number of months shall not be less than eight, and in school districts having an assessed valuation of less than thirty thousand dollars and having less than thirty children of school age, the minimum number of months shall not be less than seven, on the pain of forfeiture of their share of the primary school interest fund.

[18] The qualified voters present at any annual meeting, in districts required to hold annual meetings, shall determine the length of time a school shall be taught in their district during the ensuing year, which shall not be less than nine months in all districts, except in primary districts having a valuation of less than seventy-five thousand dollars, the minimum number of months shall not be less than eight, and in school districts having an assessed valuation of less than thirty thousand dollars and having less than thirty children of school age, the minimum number of months shall not be less than seven on the pain of forfeiture of their share of the primary school interest fund.

[19] The board of every district shall determine the length of the school term. The minimum number of months shall not be less than 9 in any school district on the pain of forfeiture of its share of the primary school interest fund.

No school district shall share in any apportionment of the appropriation contained in sections 8 et seq. unless school shall be taught in said district for the minimum term of 9 months: Provided, however, That whenever it shall appear to the satisfaction of the superintendent of public instruction that any district has failed to have the full-time of school required by law through no fault or negligence of the district or its officers, he may, in his discretion, include such district in his apportionment.

The present language was added by 1972 PA 258, § 101. While this provision does not contain the express grant of discretion allowed a school district under § 1284, it instead falls within a financing act. Thus, we believe that it is reasonable to construe this provision as setting forth the conditions for receipt of state financial aid and not as the imposition of an absolute imperative that 180 days of instruction be provided.[20]

Our reading of the relevant case law is consistent with this construction of the statutes cited by the Attorney General. In *Ash v Woodhaven Bd of Ed,* 699 F2d 822 (CA 6, 1983), the plaintiff argued that § 1284(1) of the School Code of 1976 creates an absolute requirement that the board provide at least 180 days of student instruction. The Sixth Circuit Court of Appeals disagreed, explaining:

[T]he statute itself requires only that each

---

[20] Our conclusion in this regard is bolstered by the preamble to 1979 PA 94, which provides:

AN ACT to make appropriations to aid in the support of the public schools and the intermediate school districts of the state; to provide for the disbursement of the appropriations; to supplement the school aid fund by the levy and collection of certain taxes; to prescribe penalties; and to repeal certain acts and parts of acts.

school district must provide a minimum of 180 instructional days in order to receive its full state aid allotment. It then establishes a pro rata formula for diminishing the amount of state aid if a school district fails to provide 180 days of student instruction within the statutory school year. Therefore, the statute itself contemplates a situation in which a school district fails to provide for at least 180 instructional days. [*Ash, supra,* p 826.]

We agree with the Attorney General's assertion that a federal construction of state law is not binding upon this Court, *Mack v Reo Motors, Inc,* 345 Mich 268, 291; 76 NW2d 35 (1956), but we find the reasoning in *Ash* persuasive.

The *Ash* court's reasoning is similar to our own in *Durant v State Bd of Ed,* 424 Mich 364; 381 NW2d 662 (1985). In *Durant,* we held that the term "state law," as used in the Headlee Amendment, Const 1963, art 9, § 29, does not include the constitutional provision mandating a free public education. We further noted that 180 days of instruction is "contemplated" for students under § 1284 of the School Code of 1976. *Durant, supra,* p 387. We did not hold that § 1284 creates an absolute mandate of 180 days of instruction. Indeed, we emphasized the extent of local control over school curriculums by citing and quoting from *San Antonio Independent School Dist v Rodriguez,* 411 US 1, 52, n 108; 93 S Ct 1278; 36 L Ed 2d 16 (1973).

Finally, we are unpersuaded by the Attorney General's references to *State Bd of Ed v Garden City School Dist,* 62 Mich App 376; 233 NW2d 546 (1975). In *Garden City,* the state board had also sought a writ of mandamus, ordering the school district to comply with the 180-day standard. The trial court denied the writ, and the Court of Ap-

peals affirmed the decision of the trial court, explaining:

> Had 180 instructional days been possible there is no doubt a clear legal duty would have rested upon the district board to comply with the statute as directed by the state board. It seems to us further that this Court would have been obligated to require it.
> Judicial fiat cannot accomplish the impossible.
> We think the district board jumped as far as it could under the circumstances. [*Id.,* p 381.]

It is apparent that the *Garden City* Court was relying on the trial court's conclusion that 180 days of instruction in that school year was a factual impossibility. Note 4 explained in part:

> Courts in Michigan will not interfere with the trial court's refusal to issue a writ of mandamus unless it is evident that such a refusal constitutes a clear abuse of discretion. See *Iron County Board of Supervisors v Crystal Falls,* 23 Mich App 319; 178 NW2d 527 (1970), and *Nicholas v Watertown Twp,* 43 Mich App 510; 204 NW2d 365 (1972). [*Garden City, supra,* p 381, n 4.]

We therefore view the *Garden City* holding as sui generis and its reference to a "clear legal duty" to provide 180 days of instruction as obiter dictum. Our conclusion in this regard is underscored by the absence of statutory analysis in *Garden City* as well as the Court of Appeals own conclusion:

> The important thing to remember about this opinion is that we specifically declare it precedent for nothing. It is a practical solution to an insoluble legal problem. [*Garden City, supra,* p 381.]

In conclusion, we read § 1284 of the School Code of 1976 and § 101 of the School Aid Act of 1979 as providing only a financial "carrot" to school districts who comply with the 180-day instructional standard. There is no clear legal duty on the part of local districts to provide 180 days of instruction, and those districts willing to forego state financial aid may exercise their discretion to provide a lesser number. We acknowledge that the financial "carrot" offered by the Legislature may be less tempting for those school districts which, like the defendant, receive minimal state financial aid. However, contrary to the Attorney General's suggestion, we do not find that result to be absurd. Wealthier districts may ignore a number of financial incentives offered by the Legislature for compliance with statewide standards. See, e.g., MCL 388.1621; MSA 15.1919(921). Moreover, even the poorest districts are subject to no actual penalty under MCL 380.1284(1); MSA 15.41284(1) or MCL 388.1701(2); MSA 15.1919(1001)(2), since the amount of aid forfeited under these provisions is directly proportionate to the number of days of instruction less than 180.

We therefore find no clear legal duty on the part of the defendants Houghton Lake Community Schools and the Houghton Lake Board of Education to provide 180 days of instruction. Since there is no clear legal duty on the part of the defendants, the trial court and Court of Appeals decisions denying a writ of mandamus to the State Board of Education are affirmed. In so ruling, we find it unnecessary to address the defendants' argument that it has complied with the 180-day standard under 1979 AC, R 340.11, since the Attorney General has not premised his complaint upon this regulation nor alleged that the defendant has

failed to comply with it.[21] We also find it unnecessary to address the defendants' arguments that a clear legal duty under these statutes conflicts with the authority of the Michigan State Board of Education under Const 1963, art 8, § 3.[22] Finally, we find it unnecessary to address the defendants' arguments that a clear legal duty would be in conflict with the Title-Object Clause of Const 1963, art 4, § 24,[23] or the Headlee Amendment, Const 1963, art 9, § 29.[24]

## CONCLUSION

There is no clear legal duty of the defendant school district to provide 180 days of instruction under MCL 380.1284(1); MSA 15.41284(1) or MCL 388.1701(2); MSA 15.1919(1001)(2). The orders of the trial court and the Court of Appeals, denying a writ of mandamus on the complaint of the State Board of Education, are affirmed.

RILEY, C.J., and LEVIN, BRICKLEY, CAVANAGH, ARCHER, and GRIFFIN, JJ., concurred with BOYLE, J.

---

[21] The record does not establish whether state financial aid was in fact withheld for these snow days. However, we also note that the defendants have not counterclaimed for these funds and have stated for the record that the Houghton Lake Board of Education was satisfied with this forfeiture.

[22] See n 4. Again, we note that we do not approve of the reasoning of the Court of Appeals on this constitutional issue.

[23] See n 5 and accompanying text.

[24] See n 5.